IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Myron Hubbard, ) | C/A No.: 3:20-2482-JMC-SVH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | ORDER |
| South Carolina Department of ) | |
| Mental Health, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Myron Hubbard ("Plaintiff"), proceeding pro se, originally filed this case in the Court of Common Pleas for Richland County, South Carolina ("state court") alleging violations of Title VI ("Title VI") of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000d *et seq.* for employment discrimination and retaliation. [*See* ECF No. 9-1 at 5]. South Carolina Department of Mental Health ("SCDMH") removed the case from state court pursuant to 28 U.S.C. § 1331. [ECF No. 9 ¶ 6]. This matter comes before the court on Plaintiff's motions to amend/correct the complaint, for joinder, and for an extension of time to complete discovery. [ECF Nos. 47, 51].

Pursuant to 28 U.S.C. § 636(b) and Local Civ. Rule 73.02(B)(2)(e) (D.S.C.), this case has been referred to the undersigned for all pretrial proceedings. For the reasons that follow, Plaintiff's motion to amend/correct and for joinder is denied and motion for extension of time is granted in part.

I.      Factual and Procedural Background

Plaintiff was employed by the Missouri Department of Mental Health ("MDMH") from September 1998 to December 2008, and from September 1998 to July 2002 he was a nurse at the Metropolitan St. Louis Psychiatric Center. [*See* ECF No. 47-1 at 48]. Plaintiff was employed by SCDMH beginning March 2016 until he notified SCDMH of his resignation on July 23, 2020. [*See* ECF 9-1 at 22, ECF No. 47-2 at 27].

During his employment with SCDMH, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). On January 31, 2020, the EEOC issued a Dismissal and Notice of Rights letter. [ECF No. 9-1 at 14].

Thereafter, Plaintiff initiated this action against SCDMH on April 27, 2020. [ECF No. 9-1 at 5]. In his complaint, Plaintiff only names SCDMH as a defendant, although he makes additional allegations concerning MDMH. *See, e.g., id.* at 6 ("From the South Carolina Department of Mental Health or Missouri Department of Mental Health, Mr. Hubbard [has] experienced extreme discrimination . . . ."). Plaintiff further alleges in his complaint that "he filed a discrimination complaint in the Missouri federal Courts in Cases #

2

4:11-cv-02082-JAR, 4:15-cv-00722, 2:18-cv-04201-NKL"[1] and that SCDMH and MDMH have colluded to deprive him of his rights. *Id.* at 7.

---

[1] The court takes judicial notice of the records in Petitioner's civil cases. Courts "may properly take judicial notice of matters of public record." *Phillips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). "We note that the most frequent use of judicial notice . . . is in noticing the content of court records." *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) (internal quotations and citation omitted). In each of the three referenced cases, the court dismissed Plaintiff's complaint with prejudice. As summarized by the United States District Court for the Western District of Missouri:

> Plaintiff Myron Hubbard worked as a psychiatric nurse for the Missouri Department of Mental Health until he was denied leave and constructively discharged in 2008. Mr. Hubbard brought Title VII discrimination and Family Medical Leave Act [("FMLA")] claims against the Department and others pertaining to his discharge. *See generally Hubbard v. St. Louis Psychiatric Rehab. Ctr.*, No. 11-2082, 2013 WL 4052908 (E.D. Mo. Aug. 12, 2013) (*Hubbard I*). Following the dismissal of his Complaint with prejudice in *Hubbard I*, Mr. Hubbard brought another suit against the Department, this time alleging violation of Title VI for the same conduct. His complaint was dismissed with prejudice based on res judicata. *See generally Hubbard v. Missouri Dep't of Mental Health*, No. 15-722, 2016 WL 593585 (E.D. Mo. Feb. 12, 2016) (*Hubbard II*).
>
> Mr. Hubbard is currently a temporary hourly employee for the South Carolina Department of Mental Health. Mr. Hubbard, proceeding pro se, now alleges that the Missouri Department of Mental Health 1) committed fraud on the court in *Hubbard I* and *II* by misrepresenting whether it receives federal funds for the purpose of providing employment, resulting in a denial of Mr. Hubbard's due process rights, and 2) violated Title VI, and continues to violate Title VI through the Missouri Attorney General's Office and the South Carolina Department of Mental Health's retaliatory acts against him.

3

On February 3, 2021, Plaintiff filed the instant motion for leave to amend his complaint and for joinder to add MDMH to this action. On February 22, 2010, Plaintiff filed the instant motion for extension of time to complete discovery. SCDMH responded to both motions. [*See* ECF Nos. 49, 53].

II.  Discussion

    A.  Standard on Motion to Amend and for Joinder

Leave to amend should be freely granted under Fed. R. Civ. P. 15(a), and amendments are generally accepted absent futility, undue prejudice, or bad faith. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009). The court can deny a motion to amend a complaint "if amending the complaint would be futile, that is, 'if the proposed amended complaint fails to satisfy the requirements of the federal rules.'" *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (citation omitted).

---

*Hubbard v. Missouri Dep't of Mental Health*, C/A No. 2:18-04201-NKL, 2018 WL 6683023, at *1 (W.D. Mo. Dec. 19, 2018) (dismissing Plaintiff's complaint with prejudice), *aff'd*, No. 19-2341 (8th Cir. filed Oct. 24, 2019), *cert. denied*, 141 S. Ct. 89 (2020); *see also Hubbard v. St. Louis Psychiatric Rehab. Ctr.*, C/A No. 4:11-2082-JAR, 2013 WL 4052908, at *1 (E.D. Mo. Aug. 12, 2013), *aff'd*, 556 F. App'x 547 (8th Cir. 2014), *cert. denied*, 574 U.S. 990 (2014), *reh'g denied*, 135 S. Ct. 1485 (2015); *Hubbard v. Missouri Dep't of Mental Health*, C/A No. 4:15-722-RLW, 2016 WL 593585, at *1 (E.D. Mo. Feb. 12, 2016), *aff'd*, 669 F. App'x 816 (8th Cir. 2016), *cert. denied*, 137 S. Ct. 2195 (2017), *reh'g denied*, 138 S. Ct. 30 (2017).

Fed. R. Civ. P. 19 provides when a party must be joined, while Fed. R. Civ. P. 20 governs when a party may be joined. Under Rule 19(a)(1), "[a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined" if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Rule 20(a)(2) allows a person to be joined as a defendant if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

    B.    Analysis

Plaintiff's original complaint is nine pages. [*See* ECF No. 9-1]. Plaintiff's proposed amended complaint ("PAC") is 127 pages, and, through it, he seeks to add MDMH as a defendant and to assert a claim for constructive discharge against SCDMH. [*See* ECF No. 47, ECF No. 47-1 at 5–6]. The

majority of the allegations in the PAC concern improper conduct by MDMH in Plaintiff's previously-litigated cases. [*See* ECF No. 47-1 at 49–127].[2]

### 1.  Joinder of MDMH

SCDMH argues that Plaintiff's motion to join MDMH should be denied as futile because MDMH is not a necessary party to this action and the allegations Plaintiff asserts do not arise out of the same transaction or occurrences as those alleged against SCDMH. [ECF No. 49 at 5–7]. Plaintiff argues that SCDMH cannot act on MDMH's behalf, nor represent MDMH without its consent or permission. [ECF No. 52 at 43–45]. Plaintiff further argues that SCDMH is incorrect that "the allegations asserted do not arise out of the same transaction or occurrences as those alleged against SCDMH," but does not provide further argument or explanation in support beyond stating that both MDMH and SCDMH were named in the same EEOC complaint and "continue to commit similar acts." *Id.* at 44–45.

A review of Plaintiff's PAC reveals that he is attempting either to relitigate the previous cases he has participated in, litigate claims unrelated to the claims asserted in his original complaint against SCDMH, or both.[3]

---

[2] The vast majority, if not all, of the proposed amendments to Plaintiff's complaint concern allegations as to MDMH and allegations Plaintiff argues supports his claim for constructive discharge. To the extent that Plaintiff has included proposed amendments to his complaint that do not fall into these two categories, neither party specifically addresses those proposed amendments. [*See* ECF Nos. 47, 49, 52]. Therefore, the court declines to address any such proposed amendments, as well.

As stated above, Plaintiff asserts in his original complaint claims for violations of Title VI and Title VII against SCDMH, alleging employment discrimination and retaliation. In Plaintiff's PAC, he makes three sets of allegations involving MDMH that he argues warrants MDMH being joined in this action.

First, Plaintiff states that SCDMH's actions at issue occurred after he filed discrimination suits against MDMH in Missouri courts and therefore SCDMH had "motive" to discriminate and retaliate against him. [*See, e.g.*, ECF No. 47-1 at 2, *see also id.* at 25 ("All of the South Carolina Department of Mental Health conduct occurred after and during the Plaintiff discrimination complaints to the Courts or in his EEOC complaint.")].

Second, Plaintiff alleges that MDMH's attorney requested SCDMH provide a financial document to a circuit court in St. Louis, Missouri, to be used to determine Plaintiff's child support requirements. *Id.* at 17–20. Plaintiff alleges that SCDMH produced a false document that resulted in him paying more child support, and receiving fewer wages, than should have

---

[3] Although Plaintiff appears to argue otherwise, that MDMH was named in his original complaint does not affect the above analysis as to whether MDMH should now be joined.

occurred, and that this is evidence of MDMH and SCDMH's "collusion and conspiracy." *Id.*[4]

Finally, Plaintiff alleges MDMH has committed multiple illegal acts against him, separate and apart from any actions taken by SCDMH, including that MDMH, as Plaintiff's former employer, discriminated against him, retaliated against him, committed criminal acts against him,[5] failed to properly investigate his claims, constructively discharged him from employment on December 15, 2008, created a hostile work environment, denied him his FMLA rights, denied him tuition reimbursement and student loan repayments, failed to promote him, and failed to rehire him. *See, e.g., id.* at 2–4, 25, 32–49.[6]

---

[4] To the extent Plaintiff is alleging that part of SCDMH's discriminatory or retaliatory behavior towards him involved the creation and transmission of this allegedly false document, such an allegation is against SCDMH, not MDMH.

[5] Plaintiff states that "[t]he discrimination acts, including criminal acts, that occurred in Missouri has been reported to the United States Department of Justice in the State of Missouri." [ECF No. 47-1 at 4].

[6] As stated, Plaintiff additionally recounts at length the various cases he has brought against MDMH, including multiple appeals, arguing MDMH committed "fraud on the court" by representing to the federal district courts in Missouri, the Eighth Circuit, and the Supreme Court, that it was not subject to Title VI. [ECF No. 47-1 at 49–126]. Like the allegations reviewed above, these allegations do not indicate that MDMH is a necessary or required party in the instant case nor that Plaintiff's allegations as to both parties arise out of the same transactions or occurrences. Additionally, the court rejects Plaintiff's attempts to relitigate claims against MDMH that have been dismissed with prejudice. *See Hubbard*, 2018 WL 6683023.

None of the above allegations concerning MDMH indicate that MDMH is a necessary or required party in the instant case or that Plaintiff's allegations as to both parties arise out of the same transactions or occurrences. First, the conclusory allegation, that one entity retaliated against him because he previously filed suit against another entity, is insufficient, particularly where, here, Plaintiff has not alleged SCDMH had any knowledge of his litigation against MDMH. Similarly insufficient is Plaintiff's allegation that SCDMH provided an allegedly-false document about him to MDMH's attorney, as are Plaintiff's allegations concerning actions taken by MDMH separate and apart from actions taken by SCDMH.

The relief Plaintiff seeks against MDMH is unrelated to the relief he seeks against SCDMH in that these two entities employed Plaintiff at two different times and allegedly damaged him in different ways.[7] Plaintiff filed the instant suit to recover damages for the treatment he received as an employee of SCDMH, and the absence of MDMH will not impede the court's ability to award "complete relief" on Plaintiff's existing claims. Permissive joinder is inappropriate where Plaintiff's claims as to MDMH and SCDMH do

---

[7] Plaintiff states in briefing that the damages from SCDMH are $25,800 in lost wages, $21,424 in taken wages, and various amounts related to injuries he sustained and that were not treated by SCDMH. [*See* ECF No. 52 at 39–40]. As to MDMH, Plaintiff states that his damages are $145,000 in lost wages "as already previously stated in Court record," $8,000 for tuition reimbursement, and $35,000 in student loan fees. *See id.*

9

not arise out of the same transactions or occurrences. Accordingly, the undersigned denies Plaintiff's motion to join MDMH to this action.[8]

2.   Constructive Discharge Claim Against SCDMH

SCDMH argues Plaintiff cannot bring a claim for constructive discharge pursuant to Title VII. Plaintiff appears to concede as much, but argues his claim for constructive discharge should be allowed as brought pursuant to Title VI. Plaintiff additionally argues he has alleged a claim for tortious wrongful discharge under South Carolina law. The court will address each argument in turn below.

a.   Title VII Constructive Discharge Claim

In his PAC, Plaintiff states:

South Carolina Department of Mental Health created working conditions so intolerable that a reasonable person would have felt forced to resign when it committed illegal acts of criminal negligence against the Plaintiff, where it ignored known and obvious risk, disregarded the life and safety of Plaintiff and committed acts that threaten the Plaintiff life and could have caused the Plaintiff death and withheld life saving treatment that could have also caused the Plaintiff death. Further, the Plaintiff committed criminal acts that caused the Plaintiff injuries not to be treated with the effect of causing him to suffer in pain and implemented new procedures toward the end of his Constructive Termination/Constructive Discharge that significantly increased his risk of injury and occupational exposure to blood, while continuing to deny him treatment for injures that would include occupational exposure to blood, of which could cause his death. Along, with other illegal criminal

---

[8] Given the above, it is unnecessary to address the parties' arguments as to whether this court has personal jurisdiction over MDMH.

> acts that caused the felony theft of the Plaintiff wages and its other illegal acts that it committed against the Plaintiff, that includes its illegal discrimination and retaliation that created the Constructive Termination/Constructive Discharge.

[ECF No. 47-1 at 5–6, *see also id.* at 6–12].

Under Title VII, a plaintiff must exhaust his administrative remedies by first filing a charge with the EEOC, and the "scope of the plaintiff's right to file a federal lawsuit is determined by the charge's contents." *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). "[A] failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim." *Id.* While the court recognizes "that EEOC charges often are not completed by lawyers and as such must be construed with utmost liberality," the court cannot "read into administrative charges allegations they do not contain." *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 408 (4th Cir. 2013).

Because Plaintiff's charge was completed while he was still employed with SCDMH, his claim for constructive discharge was not, and could not have been, included or referenced in his charge of discrimination. Therefore, this claim is outside the scope of his charge and is barred.

### b.    Title VI Constructive Discharge Claim

Title VI provides that "[n]o person . . . shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the

benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Title VI only provides a cause of action in employment disputes when "a primary objective of the Federal financial assistance is to provide employment." *Id.* § 2000d–3.

Title VI does not require exhaustion of administrative remedies. *See Martin v. Clemson Univ.*, 654 F. Supp. 2d 410, 422 (D.S.C. 2009) (citing *Cannon v. Univ. of Chicago*, 441 U.S. 677, 706–08 n. 41 (1979) (noting that exhaustion of Title IX administrative remedies is not required before one files a private action, and that Title IX and Title VI are similarly interpreted and applied)). In this circuit, to show constructive discharge, a plaintiff must allege that racial bias motivated the employer's deliberate actions and that those actions resulted in objectively-intolerable working conditions. *See Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 187 (4th Cir. 2004) (analyzing constructive discharge claim brought pursuant to 42 U.S.C. § 1981 and Title VII).

For the purposes of resolving Plaintiff's motion, the court assumes this circuit recognizes a claim for constructive discharge brought pursuant to Title VI and that a Title VI claim can be brought against SCDMH. Regarding the first prong of the applicable test, although Plaintiff has alleged a list of offensive, unpleasant, and unsafe work conditions, as discussed below, it is not clear Plaintiff sufficiently alleges his working conditions were objectively

12

intolerable. *See Honor*, 383 F.3d at 183–87 (concluding that plaintiff's job conditions were not intolerable even though he was told that he would be losing his job and was subjected to racial hostility from a coworker); *Williams v. Giant Food Inc.*, 370 F.3d 423, 434 (4th Cir. 2004) (holding that allegations were insufficient to support charge of constructive discharge where "supervisors yelled at employee, told her she was a poor manager, gave her poor performance evaluations, chastised her in front of customers, and once required her to work with an injured back"). However, even assuming Plaintiff has met this first requirement, he does not meet the second prong in that he has failed to allege that SCDMH "deliberately created these conditions to pressure [Plaintiff] to resign . . . because of race or otherwise." *Honor*, 383 F.3d at 187–88.

First, Plaintiff alleges SCDMH forced him to work in unsafe conditions, including (1) making "him work the COVID Quarantine Lodge with knowledge of the obvious risk of exposing the Plaintiff to serious illness and death due to his health conditions" without proper equipment particularly for obese employees, (2) inadequately responding to Plaintiff being exposed to potentially infected blood, and (3) requiring Plaintiff to provide "force medications" to patients under unsafe conditions. [ECF No. 52 at 5–12, 15–16, *see also* ECF No. 52 at 18–31]. Plaintiff identifies one specific employee, Sharmell Johnson ("Johnson"), who he alleges was given medication following

13

exposure to potentially infected blood, whereas Plaintiff was denied this medication, but Plaintiff does not identify Johnson's race. *Id.* at 11–12. Plaintiff also alleges that following his complaints of discrimination, "doctors began ordering force medications the day of or the day before Mr. Hubbard work days, so he would be giving them during the most dangerous period and he would be giving them the most" and SCDMH changed its policy allowing for assistance to nurses in such instances. *Id.* at 15–16.

The Fourth Circuit "has insisted that constructive discharge claims be 'carefully cabined' because the claim is 'so open to abuse,'" and the Fourth Circuit's "prior cases have explained that 'dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Lauture v. Saint Agnes Hosp.*, 429 F. App'x 300, 308 (4th Cir. 2011) (citing *Honor*, 383 F.3d at 187, *Williams*, 370 F. 3d at 434). Here, it is unclear if Plaintiff has alleged objectively-intolerable working conditions where, except for in one specific instance involving Johnson and a general claim he was scheduled to provide "force medications" more often, Plaintiff has alleged that his coworkers were faced with the same "difficult and unpleasant work conditions" he describes. However, even if objectively intolerable, there is no indication SCDMH implemented the policy decisions and requirements described to force Plaintiff to resign. Additionally, there is no indication that

14

those policy decisions and requirements were "were motivated specifically by [racial] bias." *Alba v. Merrill Lynch & Co.*, 198 F. App'x 288, 294 (4th Cir. 2006).[9]

Plaintiff also argues that SCDMH created objectively-intolerable conditions as follows:

> Simultaneously while SCDMH employee was committing perjury by writing false information on state documents to double his child support obligation, the other government SCDMH employees were creating an immensely hostile work environment with profanity, disrespect, insubordination, the usage of the word NIGGER in the work place, abusive work environment that impaired the Plaintiff ability to work and intolerable work conditions.

[ECF No. 47-1 at 20 (emphasis in original)].[10] More specifically, Plaintiff identifies one instance when racially-offensive words were used in the workplace by "Bridget Entziminger RN," although he does not allege when it occurred, and alleges that "a large monkey poster was seen at the nursing

---

[9] For the same reasons stated above, the undersigned finds Plaintiff's allegations that SCDMH's blocked treatment for his knee and back injuries insufficient, where Plaintiff has alleged only that "prior to his discrimination filing," his injuries "were promptly and properly treated but NONE were promptly nor properly treated after his discrimination filings" and where Plaintiff states generally that "the South Carolina Department of Mental Health aren't committing the criminal act of Workman's Comp FRAUD to prevent its other employees from getting their injuries treated." [*See* ECF No. 47-1 at 12–15].

[10] To the extent Plaintiff argues that SCDMH's creation and submission of the allegedly-false document concerning his financial status supports his claim for constructive discharge, he has not alleged this document created intolerable work conditions or that SCDMH's creation of the document was motivated by racial bias and with the intention of forcing Plaintiff to resign.

15

station on the unit Mr. Hubbard worked on, pointed directly toward Mr. Hubbard at the medication room he was working in." *See id.* at 4, 29. Plaintiff additionally alleges multiple instances of "disrespect, rudeness and insubordination" and the use of profanity, including at least one instance of being called dumb. *Id.* at 27–29 ("SCDMH attorneys have provided a document showing they followed up on the complaint against Lavida Porter where she admitted saying "carry yo dumb ass on then.""). Plaintiff generally alleges that other employees did not have to endure the treatment he received. *See, e.g., id.* at 30 ("Since the South Carolina Department of Mental Health employees aren't calling its other nurses dumb, refusing to do what its other charge nurses are asking them to do etc., establishes their discriminatory behavior specific to the Plaintiff, further, since the other Lodges aren't using profanity and the word NIGGER in the workplace, establishes the offensive hostile environment specific to the Lodge the Plaintiff worked on.").[11]

Although Plaintiff alleges offensive, unfair, and unpleasant treatment from certain coworkers, there is no indication this environment was intentionally created by SCDMH on someone acting on its behalf "based on

---

[11] Plaintiff has submitted to the court his resignation letter. [*See* ECF No. 47-2 at 27]. In it, Plaintiff states he is resigning, but states he is also providing "notice of constructive discharge," recounting many of the same allegations summarized above. *See id.*

his race," *Endara v. New Life Fitness World of S.C., Lexington, Inc.*, C/A No. 3:05-2691-MBS-JRM, 2006 WL 8445560, at *4 (D.S.C. May 25, 2006), or that the limited number of incidents described created an environment that was objectively intolerable. *See, e.g., Amirmokri v. Baltimore Gas & Elec. Co.*, 60 F.3d 1126, 1131 (4th Cir. 1995) (holding plaintiff's testimony that his co-workers "subjected him to epithets about his Iranian origin almost daily and tried to embarrass him in public" and that he developed an ulcer as a result was sufficient to create a factual issue about the intolerability of his working conditions).

      c.  Tortious Wrongful Discharge

Plaintiff additionally argues he is asserting a claim for tortious wrongful discharge under South Carolina law. [*See* ECF No. 52 at 17 (citing *Balas*, 711 F.3d at 409), *see also id.* at 32–33]. Even assuming South Carolina recognizes this cause of action where Plaintiff was not terminated but resigned, it "does not extend to situations where the employee has an existing statutory remedy for wrongful termination." *Lindblad v. J&I Servs., Inc.*, C/A No. 4:18-1336-RBH-TER, 2019 WL 653968, at *5 (D.S.C. Jan. 30, 2019), report and recommendation adopted sub nom. *Lindblad v. J&L Servs., Inc.*, C/A No. 4:18-01336-RBH-TER, 2019 WL 652248 (D.S.C. Feb. 15, 2019). As discussed above, Plaintiff argues he has alleged a claim for constructive discharge brought pursuant to Title VI. Accordingly, he is precluded from

17

asserting a wrongful termination claim, even where he has failed to successfully assert a cause of action under Title VI. *See id.* ("Thus, it follows that the prohibition is not from a double recovery, but from pursuing a claim under common law when a statutory remedy exists. Therefore, because statutory remedies exist for Plaintiff's claims of discharge based on discrimination and retaliation, dismissal of Plaintiff's wrongful termination claim is proper.").[12]

In sum, the undersigned denies Plaintiff's motion to amend to assert a constructive discharge claim against SCDMH without prejudice and denies his motion for joinder to add MDMH as a defendant with prejudice.[13]

### 3. Motion for Extension of Time

Plaintiff has filed a motion for extension of time for discovery to be completed, as well as requests for issuance of summons and subpoenas. [ECF

---

[12] In briefing, Plaintiff argues that SCDMH has failed to properly respond to his PAC. [*See* ECF No. 52 at 2–12]. To the extent Plaintiff seeks default judgment against SCDMH for failure to properly respond to his PAC, his request is denied. Until the court grants Plaintiff's motion to amend his complaint, no amended complaint is entered on the docket necessitating a response by SCDMH as directed by Fed. R. Civ. P. 8. Likewise, the court rejects Plaintiff's argument that SCDMH has failed to carry its burden in this case pursuant to Fed. R. Civ. P. 56, where Plaintiff has not filed a motion for summary judgment or any other motion requiring SCDMH to submit evidence in response.

[13] The court denies Plaintiff's motion for joinder with prejudice because he cannot amend his complaint to state a cause of action against MDMH that would be permitted to proceed in this court.

No. 51]. SCDMH does not oppose Plaintiff's request for an extension of time to complete discovery, and the undersigned grants Plaintiff's motion.

Plaintiff additionally seeks a summons be issued as to MDMH and 15 subpoenas be issued to (1) the Columbia Police Department (2) SCDMH, (3) Boost Mobile, and (4) MDMH. [ECF No. 51-1 at 1–16]. Because the court has denied Plaintiff's motion to join MDMH, Plaintiff's motion for issuance of summons and subpoenas as to MDMH is likewise denied with prejudice. As to the remainder of the subpoena requests, to the extent Plaintiff seeks information related to claims against MDMH or his constructive discharge claim, claims the court does not allow as discussed above, Plaintiff's motion is also denied with prejudice.

The court also denies Plaintiff's motion for subpoenas as to SCDMH, a party in this action, in that he should seek the requested information, to the extent he seeks relevant information, through requests for production of documents consistent with Fed. R. Civ. P. 34. As directed by that rule, such discovery requests are served on opposing counsel and are not filed with the court.

Two subpoena requests remain, one to Columbia Police Department for a "certified copy of Officer C.J. Johnson incident report #190017096" and one to Boost Mobile for "certified copies of all phone records including text messages and contents of text messages, call logs, including complete history

19

of all phone calls and voice mails from the Plaintiff" for an identified telephone number. [ECF No. 51-1 at 2, 10]. Plaintiff is reminded that discovery sought must be proportional to the needs of the case and tailored to request relevant information. Because it is currently unclear if these requests are both relevant and proportional, Plaintiff's motion for issuance of these subpoenas is denied without prejudice. Should Plaintiff choose to file an additional motion for issuance of these subpoenas, he should provide information to the court indicating how these requests relate to the claims or defenses in this case.

III. Conclusion

For the foregoing reasons, the undersigned denies Plaintiff's motion to amend [ECF No. 47] and grants in part and denies in part Plaintiff's motion for extension of time. [ECF No. 51]. A separate amended scheduling order will issue.

IT IS SO ORDERED.

Shiva V. Hodges
United States Magistrate Judge

March 9, 2021
Columbia, South Carolina

20